**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

IN RE:

MICHAEL A. ROHWEDDER
MICHELLE L. ROHWEDDER

    Debtor(s).

In Proceedings Under
Chapter 13

Case No. 24-30227

## OPINION

This matter is before the Court on the Trustee's Objection to Confirmation of Debtors' Amended Plan (Doc. 31). This case raises the issue of whether above-median income debtors may deduct tobacco expenses on their Form 122C-2 as a "special circumstance" deduction.

## FACTS

Debtors Michael and Michelle Rohwedder ("Debtors") filed their Chapter 13 Voluntary Petition on April 11, 2024. In conjunction with their Petition, Debtors filed their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period (Form 122C-1), which determined that the Debtors' annual household income exceeded the median family income for a household of three persons in Illinois, Debtors' applicable household size and state. As a result, the Debtors were required to calculate their disposable under 11 U.S.C. § 1325(b)(3) using Form 122C-2.

The Debtors' original Form 122C-2, which was filed with the Petition, calculated the Debtors' monthly disposable income at $733.51. Included in this calculation was a $300.00 per month deduction for tobacco products, which Debtors characterized as a "Deduction for Special Circumstances" at Line 43 of their Form. Based on these calculations, the Debtor's proposed a

1

sixty (60) month Plan, with initial payments of $955.00 per month, which then were to increase to $1,322.00 per month beginning in Month 31 ("Original Plan.").[1]

On May 24, 2024, the Trustee objected to the Original Plan asserting, *inter alia,* that expenditures for tobacco are not reasonably necessary and do not qualify as a "special circumstance" expense as contemplated by 11 U.S.C. § 707(b)(2)(B)(i). On June 14, 2024, before the Court could rule on the First Amended Objection to Confirmation, the Debtor filed an Amended Plan. The relevant provisions of the Amended Plan, *i.e.* the proposed plan payment, were unchanged. The Trustee again objected to the Plan on the grounds that the proposed deduction from disposable income for tobacco expenses was impermissible.

A hearing was conducted on the matter on August 8, 2024. At that time, the Court determined that in claiming their "special circumstance" deduction the Debtors had failed to comply with the provisions of 11 U.S.C. § 707(b)(2)(B), which requires Debtors to provide certain documentation regarding such claimed expenses. Consequently, the Court ordered the Debtors to file a Amended Form 122C-2 within twenty-one (21) days and directed the Trustee to file a brief on the issue within thirty (30) days thereafter[2] Those documents were filed on August 26, 2024 and September 30, 2024 respectively and the matter was taken under advisement.

## DISCUSSION

Any inquiry regarding a debtor's "disposable income" must begin with a discussion of § 1325(b) of the Bankruptcy Code. It states, in pertinent part[1]:

> (b)(1) If the trustee or the holder of an allowed unsecured claim object to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

---

[1] Based on Debtors' Schedule I, the increase I the amount of Plan payments in Month 31appears to be attributable to the anticipated satisfaction of a 401(k) loan.
[2] The Debtors filed their brief on June 14, 2024 prior to being directed to do so.

2

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
>
> (2) For purposes of this subsection, 'disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor….

11 U.S.C. § 1325(b)(1), (2). In other words, that portion of a debtor's projected income which is not reasonably necessary for the maintenance of the debtor and their dependents constitutes "disposable income" for purposes of 11 U.S.C. § 1325(b).

For above-median income debtors, such as the Debtors in this case, § 1325(b)(3) requires that "amounts reasonably necessary to be expended under paragraph [1325(b)(2)], shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)". Section 707(b)(2)(A)(ii)(I) states in relevant part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards and the debtor's actual monthly expenses for the categories specified as Other Necessary expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent….

11 U.S.C. § 707(b)(2)(A)(ii)(I). Section 707(b)(2) is essentially a "means test" designed to determine whether a debtor's bankruptcy filing is presumptively abusive. This means test is embodied in Official Bankruptcy Forms 122C-1 and 122C-2, which assist debtors in calculating their disposable income. *In re Early,* 523 B.R. 804 (Bankr. S.D. Ill. 2014); *In re Scott*, 457 B.R. 740, 744 (Bankr. S.D. Ill. 2011).

Form 122C-2 sets forth a number of prescribed categories of expenses which may be deducted from a debtor's income, including food, clothing, housing, transportation, childcare and

3

insurance expenditures. Line 43 of the Form also includes a deduction for "special circumstances," which permits the debtor to take a deduction "if special circumstances justify additional expenses and [the debtor has] no reasonable alternative…" *See* Amended Form 122C-2, Line 43 (Doc. 40). The Debtors assert that their $300.00 per month tobacco expenditures may be deducted as a "special circumstance." The Court disagrees.

"Special circumstances" for purposes of the means test are addressed in 11 U.S.C. § 707(b)(2)(B). Section 707(b)(2)(B)(i) states, in pertinent part:

> In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

Section 707(b)(2)(B)(i).

The term "special circumstances" is not defined by the Bankruptcy Code. Section 707(b)(2)(B) provides two examples of such circumstances—a serious medical condition or a call to duty in the Armed Forces. However, because these examples are prefaced by the words "such as," courts, "generally agree that the statute's examples of 'special circumstances' are non-exclusive and merely illustrative." *In re Sandburg,* 629 B.R. 452, 462 (Bankr, N.D. Ill. 2021), *quoting In re Harmon*, 446 B.R. 721, 728 (Bankr. E.D. Pa. 2011). Given the nature of the stated examples in § 707(b)(2)(B), some courts suggest that the circumstances in question must be beyond the debtor's control. *In re Henderson*, 2024 WL 322170 (Bankr. N.D. Ga., January 25, 2024); *In re Brown*, 500 B.R. 255, 262 (Bankr. S.D. Ga. 2103). However, other courts have refused to "read in" an involuntariness requirement. *In re Sandberg*, 629 B.R. 452, 463 (Bankr. N.D. Ill. 2021); *In re Burggraf,* 436 B.R. 466, 472 (Bankr. N.D. Ohio 2010); *In re Crego*, 387

4

B.R. 225 (Bankr. E.D. Wis. 2008; *In re Graham,* 363 B.R. 844 (Bankr. S.D. Ohio 2007). As the court explained in *Graham*:

> Nothing in the statute suggests or mandates that the 'special circumstances' be outside the control of the debtor. Had Congress intended to place such a restriction on the nature of the special circumstances it envisioned, Congress knows well how to construct appropriate language…. This Court cannot insert language in the statue which is not present."

*Graham* at 847. Instead, the determination of whether an expenditure is justified as a "special circumstance is subject to the discretion of the Court. *Crego*, 387 B.R. at 229.

This Court agrees that the language of § 707(b)(2)(B) does not impose a requirement that the special circumstances in question must be beyond the debtor's control. However, the statute *does* require that the debtor "itemize each additional expense, which must be speculative or hypothetical; provide documentation for such expense; and provide 'a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." *In re VanDyke*, 450 B.R. 836, 843 (Bankr. C.D. Ill. 2011), *quoting* 707(b)(2)(B)(ii). In addition, this exception requires the debtor to show that he or she has "no reasonable alternative" to the expenditure. 11 U.S.C. § 707(b)(2)(B)(i); *Hamilton v. Lanning*, 560 U.S. 505, 524, 130 S. Ct. 2464, 2477, 177 L. Ed. 23 (2010). The Debtors in this case have failed to comply with these requirements.

The debtor has the initial burden of establishing that "special circumstances" exist. In order to sustain this burden, a debtor must satisfy several procedural requirements, which are set forth in 11 U.S.C. § 707(b)(2)(B)(ii) and (iii). These sections provide:

> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—
>
>     (I) documentation for such expense or adjustment to income, and

>> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expense or adjustments to income are required.

11 U.S.C. § 707(b)(2)(B)(ii), (iii). These requirements are reiterated in the instructions to Line 43 which require debtors to "describe the special circumstances and their expenses," and to "give [their] case trustee a detailed explanation of the special circumstances and documentation of the expenses." Bankruptcy Form 122C-2, Line 43. It is only after the debtor establishes that special circumstances exist that it then becomes the debtor's burden to show that the special circumstances justify the additional expenses or the adjustment for which there is no reasonable alternative. *In re Groth*, 2018 WL 3583041 (Bankr. E.D. Wis., July 25, 2018).

The Debtors in this case did not initially provide *any* of the required information detailing their tobacco expenses to the Trustee, nor did they include any documentation substantiating these expenses with their original Form 122C-2. Rather than summarily sustaining the Trustee's objection to the Form 122C-2 due to these procedural deficiencies, the Court conducted a hearing on the matter on August 8, 2024. At that time, the Court expressly ordered the Debtors to comply with requirements of § 707(b)(2)(B)(ii) and (iii) within twenty-one (21) days.

On August 26, 2024, the Debtors filed an Amended Form 122C-2 in an attempt to comply with the Court's oral order. Debtors attached several receipts to the Amended Form evidencing convenience store cigarette purchases which were made in August 2024. They also attached various bank statements showing debit purchases in the amount of $7.24 each for the period of January through April 2024, which Debtors purport were for tobacco purchases. However, these statements show only the amounts debited and provide no explanation as to the

6

nature of the expenditures. The Court finds these submissions insufficient to substantiate the Debtors' actual tobacco expenses as required.

Similarly, according to the Trustee's brief, Debtors have not provided him with the sworn, detailed explanation of the circumstances that justify the treatment of the claimed expense as a "special circumstance" required by § 707(b)(2)(B)(ii)(II), nor does the record indicate that the Debtors have provided an attestation under oath regarding the "accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required" as mandated by § 707(b)(2)(B)(iii).

The Debtors' failure to provide all of the documentation required by § 707(b)(2)(B) is fatal to their cause. The language of § 707(b)(2) makes clear that its provisions are *mandatory*. Not only are the Debtors' submissions in support of their position procedurally deficient, but without this necessary information, the Debtors are unable to sustain their burden of proving that "special circumstances" exist and that their proposed tobacco expenditures are necessary and reasonable.

Nowhere in their Amended Form 122C-2 or in their brief do the Debtor's provide any explanation as to why their claimed tobacco expenditures are necessary, nor do they attempt to show that reasonable alternatives to these expenditures are unavailable. These requirements of § 707(b)(2)(B) are simply ignored. Instead, the Debtors' pleading focus *solely* on what they perceive as the "reasonableness" of the expense. Debtors assert that they do not maintain a "lavish lifestyle" and argue that that a $300.00 per month tobacco expense is "reasonable expense and does not constitute excessive spending." *Debtors' Brief in Opposition of Trustee's Objection to Confirmation of Amended Plan One*, Doc. 38, p. 3. The problem for the Debtors—

7

other than their abject failure to comply with the statute—is that they have failed to establish that tobacco use is in anyway a "special" circumstance. As the court explained in *In re Sandberg*,

> In analyzing a claim for adjustment under section 707(b)(2)(B), the 'focus must be on whether the debtor is, of necessity, in a different situation than the typical debtor addressed by the IRS guidelines…'. The means test incorporates policy determinations as to the reasonable types and amounts of expenses made by Congress, or, by delegation, the IRS. Where a common type of expense in common situations is not provided for in the means test, it is reasonable to believe that Congress or the Service considered such expense and intentionally omitted it. On the other hand, section 707(b)(2)(B) functions as a partial safeguard for unintended or unanticipated but unjust consequences of the mechanical and otherwise inflexible means test . . . *This exception may, therefore, apply to situations that Congress or the Service did not contemplate or predict. Or to situations sufficiently rare or fact dependent that it was seen as better to leave the determination to a case-by case basis.*

*Sandberg*, 629 B.R. at 464 (emphasis added and internal citations omitted).[3]

The explanation of special circumstances requires a showing that the debtor's situation is somehow different than that of the typical above-median income debtor, or that the debtor's choice to spend funds on a claimed expense are somehow "special, unique or atypical." *In re Groth*, 2018 WL 3583041 at *2 (Bankr. E.D. Wis., July 25, 2018). The "special circumstance" exception is not a "catch-all" provision where debtors can simply list expenses that are not otherwise address on Form 122C-2, nor is it "a back door for broad, common categories of expenses that Congress and the IRS chose not to include in section 707(b)(2)(A)." *Sandberg* at 465. Rather than being "sufficiently rare" or "atypical," expenditures for tobacco products are extremely common. Thus, this Court believes that their exclusion from the means test calculation was intentional and that such expenses do not qualify as a "special circumstance" deduction.

---

[3] Although the Debtors maintain that a $300.00 per month tobacco expense is "reasonable" and "not excessive," the amount *is* excessive when compared to the Debtors' overall disposable income. Debtors' monthly disposable income, without the $300.00 tobacco deduction is $1,033.71. Their tobacco expenditures are nearly 30% of that amount.

The Court notes that the Debtors cite two opinions in support of their position—*In re Andrick*, 604 B.R. 577 (Bankr. D. Colo. 2019) and *In re Woodman*, 287 B.R. 589 (Bankr. D. Me. 2003). However, both of these cases are factually distinguishable from the case at bar and do not advance the Debtors' cause. In *Andrick*, the above-median income debtors claimed two additional "special circumstance" expenditures totaling $1,110.00; cigarette expenditures in the amount of $210.00 and expenses for medical marijuana in the amount of $900.00. *Andrick* at 579. Although the Chapter 13 Trustee objected to confirmation of the debtors' plan on multiple grounds, including their proposed deductions for tobacco and marijuana expenditures, *Id.* at 580, the *Adrick* court expressly stated that its opinion would focus *solely* on the United States Trustee's objection to the medical marijuana deduction. *Id.* at 582. There was absolutely *no* discussion by the Court of the claimed tobacco expenditures.[4]

The Debtors' reliance on *In re Woodman* is likewise misplaced. In *Woodman*, the below-median income debtors all claimed cigarette purchases in their monthly expenditures.[5] Evergreen Credit Union, an undersecured creditor in both cases objected to confirmation on the grounds that the debtors had failed to satisfy the requirements of 11 U.S.C. § 1325(b)(1)(B), which mandates that below-median income debtors devote all of their projected disposable income to their plan for a period of at least three years. *Woodman*, 287 B.R. at 590. Specifically, Evergreen argued that any expenditures for cigarettes were not "reasonably necessary" for a debtor's support and maintenance within the meaning of § 1325(b)(2)(A) as a matter of law and, therefore, should be removed from the debtors' disposable income analysis. *Id.* at 592.

---

[4] The *Adrick* court sustained the United States Trustee's objection and refused to confirm the Debtor's plan. It reasoned that because marijuana use, even for medical purposes remains illegal under federal law a deduction for such expenditures could not be allowed as either an on-going out of pocket medical expense or as a "special circumstance" deduction. *Id.* at 582.

[5] The *Woodman* decision involved two different Chapter 13 cases which presented the same issue.

9

The *Woodman* court refused to find cigarette expenditures categorically unreasonable, opting instead to examine the "reasonableness and necessity of expenses. . . 'in the context of the individual debtors and their dependents.'" *Id.* at 593, *quoting* 2 Keith M. Lundin, CHAPTER 13 BANKRUPTCY § 165.1 at 165-1 (3d. ed. 2000). In explaining its reluctance to adopt a *per se* rule, the court explained that "such an approach can clothe subjective moral judgments with the force of law," *Id*. at 592. It was concerned that if the smoking was deemed "bad" and therefore, not "reasonably necessary," similar arguments could be made for prohibiting as never reasonably necessary "any Chapter 13 debtor's expense, however minimal, for alcohol (even one can of beer), lottery tickets (a single one), cosmetics, sugared breakfast cereal, candy bars, or even… scented soap." *Id.* After examining all of the debtors' expense (including their tobacco expenses) and finding them to be reasonable, the *Woodman* court concluded that the Chapter 13 plans satisfied the confirmation requirements §1325.

Unfortunately for Debtors in the instant case, Congress and the IRS are the arbiters of what constitutes "reasonable expenses" for above-median income debtors and not the Court. Debtors' expenses are limited to those prescribed by Form 122C-2 unless it qualifies as a "special circumstance" expenditure. By implementing a mechanical means test, Congress clearly intended that above-median income debtors would have to make certain lifestyle changes and repay their creditors to the extent that they could afford to do so. Tobacco expenditures are no more extraordinary than those of debtors who may gamble, overeat, spend excessive money on their wardrobe or have a penchant for expensive wine. There is nothing "special" about them and this Court will not require unsecured creditors to bear the cost of the Debtors' lifestyle choices.

As the Trustee notes in his brief, the Debtors in this case have more than sufficient room in their expense budget to absorb the cost of their tobacco expenditures. Debtors' means test

calculation shows excess deductions totaling $1,449.79 over their actual claimed Schedule J expenses. *See Memorandum of Law in Support of Trustee's Objection to Debtors' First Amended Plan*, Doc. 41, p. 10. If the Debtors choose to continue their tobacco use while in bankruptcy, they must find a way to do so within the constraints of the means test and not as an inappropriately claimed "special circumstance" expenditure.

Based on the foregoing, the Court concludes that the tobacco deduction claimed by the Debtors is improper and must be denied. A separate order shall enter.

ENTERED: March 13, 2025

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE